FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 20 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMES M. TATRO, )
           Plaintiff, )
    vs. ) 3:10-cv-00346-RCJ-RAM
HOMECOMINGS FINANCIAL NETWORK, ) ORDER
INC. et al., )
           Defendants. )

    This is a standard foreclosure case involving one property. The Complaint is a forty-five-page fraud-and-conspiracy-type complaint listing thirteen causes of action. The case is not part of MDL Case No. 2119, and the case probably cannot be transferred because the deed of trust ("DOT") does not involve Mortgage Electronic Registration Systems, Inc. ("MERS"). Four motions are pending before the Court: two motions to dismiss, one motion to remand, and one motion to amend the Complaint.

I.    **THE PROPERTY**

    Plaintiff James M. Tatro gave lender Homecomings Financial Network, Inc. ("Homecomings") a $219,000 mortgage to purchase a home at 1104 Tule Dr., Reno, NV 89521 (the "Property"). (*See* Deed of Trust ("DOT") 1–3, Sept. 21, 2005, ECF No. 3-2). The trustee was Fidelity National Financial, Inc. ("Fidelity") (*See id.*). Executive Trustee Services, LLC

1  ("ETS") filed a Notice of Default ("NOD") based on a default of unspecified amount as of June 1, 2009. (*See* NOD 1–2, Sept. 9, 2009, ECF No. 3-4). GMAC Mortgage, LLC ("GMAC") substituted in ETS as trustee on the same date. (*See* Substitution of Trustee, Sept. 9, 2009, ECF No. 3-3). The Property was sold on April 12, 2010. (*See* Trustee's Deed, Apr. 13, 2010, ECF No. 3-6, at 4).

The foreclosing entity, ETS, was substituted in as trustee on the day it filed the NOD, however it was substituted in by GMAC, and there is no indication in the record of how or when GMAC became the beneficiary. This indicates a potential statutory defect in foreclosure. *See* Nev. Rev. Stat. § 107.080(2)(c).

## II.  ANALYSIS

### A.  Motion to Remand

The Court denies the motion to remand, as there is diversity jurisdiction. The only non-diverse Defendant is Ticor Title of Nevada, Inc. ("TTN"), which is fraudulently joined because it is not alleged to have had any hand in the origination or servicing of the loan, but was only an escrow agent. Nor is it alleged to have had any hand in the foreclosure process except to have recorded the NOD, not signed it.

Also, doe defendants are ignored for the purposes of diversity. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Cripps v. Life Ins. Co. of Am.*, 980 F.2d 1261, 1266 (9th Cir. 1992) (citing *id.*); *Bryant v. Ford Motor Co. (Bryant II)*, 886 F.2d 1526, 1528 (9th Cir. 1989) (citing *id.*) ("Congress obviously reached the conclusion that doe defendants should not defeat diversity jurisdiction."), *cert. denied*, 493 U.S. 1076 (1990). The 1988 amendment to § 1441(a) that established the current rule overruled the Ninth Circuit's 1987 ruling in *Bryant I*. *Cripps*, 980 F.2d at 1266 & n.5 (citing *Bryant v. Ford Motor Co. (Bryant I)*, 832 F.2d 1080, 1082–83 (9th Cir. 1987) (en banc)).

1   Finally, the subject matter of the lawsuit is the $219,000 loan and the property securing
2   it. The loan is in default and has been accelerated, and Plaintiff seeks to invalidate the
3   completed transfer of the property and also to prevent any future foreclosure. If Plaintiff were to
4   win all his claims as pled, Defendants would lose more than $75,000 in missed payments and be
5   left with no security interest in the Property. The amount-in-controversy requirement is
6   satisfied.

**B.     Motions to Dismiss**

Each of Plaintiff's claims have been seen in this Court many times before in substantively identical circumstances, and the Complaint states no plausible claims against Defendants based on the conduct alleged. Foreclosure is simply not a tort where there is in fact a default. Nor are there any allegations of facts in this case that would support a fraud claim or any allegations of an agreement that would support a claim of conspiracy to commit fraud. For better or worse, Nevada has had no usury law since 1981. *See* 1981 Nev. Stat. 1593 (abolishing all limitations on agreed fees and rates of interest). The absence of a usury law makes a conspiracy based on the desire to obtain profits from fees and interest implausible, because such behavior is expressly lawful.[1]

---

[1] Historically, "usury" was synonymous with the mere charging of interest, but today it refers only to the charging of an illegally high rate of interest. *See Black's Law Dictionary* 1685 (9th ed. 2009). During the medieval period, the lending of money for profit was viewed as sinful within Christendom and was strictly prohibited. The religious prohibition of the practice was often used as an excuse to persecute Jews, whose religion did not prohibit lending for profit, and to whom Christians would often turn for loans. *See, e.g.*, Statute of Jewry, 1 Statutes of the Realm 221. King Henry VIII, frustrated with the historical laws against the charging of interest "being of so little force and effect," repealed all such laws and replaced them with a limit of 10% per annum on cash loans and mortgages, with a penalty of treble damages, fine, and imprisonment. *See* An Act Against Usury, 37 Hen. 8, c. 9 (1645) (Eng.), 3 Statutes of the Realm 996–97. Presumably, this law (as subsequently amended) controlled in Nevada until superseded by statute in 1913. *See* Nev. Rev. Stat. § 1.030 (incorporating the common law of England as of July 3, 1776 into the common law of Nevada). In 1913, the Nevada Legislature set the legal rate of interest at 12% per annum. *See* 1913 Nev. Stat. 31. In 1979, it raised the legal rate to 18%. *See* 1979 Nev. Stat. 964. Nevada finally abolished the concept of usury altogether in 1981 and

The law of Nevada does provide protection against very specific kinds of predatory lending, but the three-year statute of limitations on the Chapter 598D claim has run, and the pre-2007 version of the statute, which applies to the present note, did not apply to loans used to purchase or construct the property to be used as security.[2] Nor does the affirmative tort of wrongful foreclosure lie where there is in fact a default. *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983). Nor can failure to disclose "unsound lending and foreclosure practices" with respect to past loans and mortgages constitute fraud as to an unrelated loan. First, an opinion ("unsound") is not a material fact. Second, it would be odd to expect a lender to state a bad opinion of its own practices. The allegation that the lender failed to disclose the terms of the loan is conclusory and in fact incorrect based on public records of which the Court may take judicial notice. The Adjustable Rate Rider attached to the DOT explains the loan terms. Although perhaps unwise, the terms are not particularly complex. Nor can the failure of a lender to disclose to a borrower the lender's personal salary or bonuses, or those of a third party, constitute fraud with respect to a loan if the parties' required performance under the contract is not directly dependent on these things. Such facts might be annoying, but they are immaterial to the terms of a loan. Nor does a lender have a fiduciary relationship to a

---

now permits contracting parties to agree to any rate of interest. *See* 1981 Nev. Stat. 1593. In summary, there is no longer any traditional usury law in Nevada.

[2]Section 598D.100 applies to "home loan[s]," and the pre-2007 version of the statute required loans to qualify as "a mortgage under § 152 of the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1602(aa) . . . ." in order to qualify as a "home loan" under Nev. Rev. Stat. § 598D.040. *Id.* HOEPA § 152 excludes "residential mortgage transactions" from coverage. 15 U.S.C. § 1602(aa)(1). "Residential mortgage transaction[s]" include those where a deed of trust is created or retained against the consumer's dwelling to finance its acquisition or construction. 15 U.S.C. § 1602(w). In other words, HOEPA applies to credit transactions where a person secures a debt obligation with a security interest against his existing "principal dwelling," but it excludes "residential mortgage transaction[s]" otherwise known as purchase money mortgages. *E.g., McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 155–56 (E.D.N.Y. 2009).

borrower, obviating any tortious bad faith claim. Nor does Plaintiff explain how any Defendant breached the duty of good faith and fair dealing under the contracts. Plaintiff is in fact in breach. Defendants are not alleged to have taken any action to reduce their required performance under the contract while still complying with the letter of the contract, which is the nature of a contractual bad faith claim. The lender's performance was complete when it put the loan proceeds into escrow. Nor does Plaintiff plead the two predicate criminal offenses required for a RICO claim, because no criminal fraud is sufficiently plead, nor any other crime. Finally, no claim for unjust enrichment lies where a contract controls the relationship between the parties. *Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977).

Furthermore, rather than responding to the motions to dismiss, Plaintiff's counsel, as he typically does in these cases, has filed a "Notice of Intent to Withhold Response to Motion to Dismiss Pending Ruling on Motion to Remand to State Court." This constitutes consent to granting the motions. Local R. Civ. Prac. 7-2(d). Counsel has no authority to institute a partial stay of a case unilaterally, which is what these notices essentially purport to do. And the requirement to file an opposition is not a "burden" imposed by a potentially improper removal, as counsel has argued in other similar cases, because Defendants surely would have filed the same motions to dismiss had the case not been removed. In fact, Plaintiff would only have had ten (10) days to respond to those motions in state court before failure to respond constituted consent to granting the motions, whereas he had fifteen (15) days to respond in this Court. *Compare* Nev. Dist. Ct. R. 13(3), *with* Local R. Civ. Prac. 7-2(b). Removal therefore had the effect of giving Plaintiff an additional five days to respond to these inevitable motions to dismiss, in addition to the delay in Defendants' filing of the motions created by the removal process itself. There is simply no legitimate excuse for failing to respond. In addition to constituting consent to grant the motions to dismiss under Local Rule 7-2(d), this willful failure to respond to dispositive motions might violate Nevada Rule of Professional Conduct 1.1, which

1 requires competent representation.

2     The courts have received thousands of identical cookie-cutter complaints containing lengthy diatribes against the mortgage industry for well over a year now. To be sure, the last two decades have been a period of reckless credit expansion, culminating in the collapse of the housing industry and a deep economic recession—now approaching a depression in states such as Nevada—and reminding us of Robert Heinlein's admonition that "there ain't no such thing as a free lunch." The situation may be intensely frustrating and emotional for clients and counsel alike, but this is no reason to abandon all pretense of compliance with the pleading standards and turn the filing of legal complaints into an exercise in catharsis that serves no purpose but to occupy the resources of the courts with a never-ending stream of identical, legally implausible claims.

    The typical complaint in these cases involves a defaulted mortgage and a clean foreclosure. In some cases, the foreclosure is statutorily defective because the foreclosing entity, i.e., the entity that filed the NOD, was not the trustee, beneficiary, or agent of one of those entities when it filed the NOD. *See* Nev. Rev. Stat. § 107.080(2)(c). In such cases, a preliminary injunction is appropriate to stop foreclosure where the mortgagor is willing to do equity by making payments during the preliminary injunction period. The Court has in fact issued many preliminary injunctions in such cases. Also, a permanent injunction invalidating a foreclosure or even avoiding a foreclosure sale would be appropriate in a case where a mortgagor were willing to do equity by curing the entire default. Such a case has not yet presented itself in this Court. To the extent counsel continues to prosecute unmeritorious claims, or even meritorious claims of statutory defects in foreclosure where the client is not willing to do equity by making payments or curing the entire default, as applicable, he may be in violation of the rule prohibiting the filing of pleadings for the purpose of harassment or delay, because a delay in foreclosure is inevitably the only result in such cases. *See* Fed. R. Civ. P. 11(b)(1).

///

### C. Motion to Amend

Finally, Plaintiff moves to amend the Complaint to withdraw any possible reference to federal claims, such that there will be no federal question jurisdiction. Although counsel apparently assumed, without confirming, that Defendants removed based on both federal question and diversity jurisdiction, as defendants typically do in these cases, here Defendants removed only based on diversity jurisdiction. The proposed first amended complaint ("PFAC") does not cure any of the defects in the Complaint. Moreover, the only substantive changes to the Complaint in the PFAC are new claims for unfair debt collection practices under section 649.370 of the Nevada Revised Statutes ("NRS") and for unfair and deceptive trade practices under section 598.0923, the former of which in fact supports federal question jurisdiction even though no claim in the original Complaint did.

Section 649.370 creates no private cause of action,[3] so the claim that refers to FDCPA necessarily relies directly on the federal cause of action. Even if the Court found an implied state cause of action, it would necessarily require substantial interpretation of federal law, because a violation of the state statute is defined purely by reference to FDCPA. *See Mesi v. Wash. Mut. F.A.*, No. 3:09-CV-582 JCM (VPC), 2010 WL 3025209, at *2 (D. Nev. July 30, 2010) (Mahan, J.). *Contra Atkinson v. Homecomings Fin., LLC*, No. 3:10-cv-00418-LRH-VPC, 2010 WL 3271741, at *2 (D. Nev. Aug. 16, 2010) (Hicks, J.) ("[C]ontrary to Defendants' position, the act defines a state claim that is separate from its federal counterpart. Although a federal regulation is expressly noted in the Nevada statute, the reference to the federal act only provides a framework for determining the type of claim that can be brought under the state

---

[3] Neither "damages," "cause of action," nor "attorney's fees" appear anywhere in Chapter 649. The Chapter provides only for criminal penalties or administrative fines. *See* Nev. Rev. Stat. §§ 649.435, 649.440.

1  statute."). The Court respectfully believes that the *Mesi* case is better reasoned. Although an
2  appropriately drafted state statute could incorporate federal standards in such a way that a
3  violation of federal standards would be sufficient, but not necessary, to constitute a violation of
4  the state statute, in the present case the Nevada Legislature has made the reach of section
5  649.370 coextensive with FDCPA and its attendant regulations. *See* Nev. Rev. Stat. § 649.370
6  ("A violation of any provision of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§
7  1682 *et seq.*, or any regulation adopted pursuant thereto, shall be deemed to be a violation of this
8  chapter."). The *Atkinson* court reasoned that because the Nevada Supreme Court had resolved
9  other sections of Chapter 649 without reference to federal law, a section 649.370 claim could be
10 resolved without the substantial interpretation of federal law. *See Atkinson*, 2010 WL 3271741,
11 at *2 (citing *State v. Hartford Accident & Indem. Co.*, 477 P.2d 592 (Nev. 1970)). But *Hartford*
12 did not involve the resolution of any section of Chapter 649 that made reference to federal law,
13 much less section 649.370, which was enacted thirty-seven years after *Hartford* was decided. *See*
14 2007 Nev. Stat. 2500; *Hartford*, 477 P.2d at 593 (interpreting former section 649.080, which did
15 not rely on any federal law). The fact that some sections of Chapter 649 can be applied without
16 interpreting federal law tells us nothing about whether any other particular section therein can
17 be. Plaintiff has not pled any violation of Chapter 649 except section 649.370, which is by its
18 text coextensive with FDCPA. Therefore, any claim under section 649.370 necessarily requires
19 the substantial interpretation of federal law, and there would be federal-question jurisdiction
20 even if a private cause of action lied under Chapter 649 such that Plaintiff did not need to rely on
21 FDCPA directly.
22     Federal-question jurisdiction can be based purely on a state claim if its resolution
23 necessarily requires the construction of federal law:
24     > The rule is well settled that a state claim "arises under" federal law "if the complaint, properly pleaded, presents a substantial dispute over the effect of federal
25     > law, and the result turns on the federal question." *Guinasso v. Pacific First Fed. Sav.*

*& Loan Ass'n*, 656 F.2d 1364, 1365–66 (9th Cir. 1981), *cert. denied*, 455 U.S. 1020, 102 S. Ct. 1716, 72 L. Ed. 2d 138 (1982). The "vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action[,]" *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 3232, 92 L. Ed. 2d 650 (1986), but a case may also arise under federal law "'where the vindication of a right under state law necessarily turn[s] on some construction of federal law.'" *Id.* (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983)).

*Berg v. Leason*, 32 F.3d 422, 423 (9th Cir. 1994). In cases such as the present one, where the state claim directly incorporates the substance of federal law, *see* Nev. Rev Stat. § 649.370, and where the state claim raises no federal constitutional issues, federal-question jurisdiction exists only if the federal law that is incorporated into the state claim provides an independent federal claim:

> In *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986), the Court considered in detail the principles of removal jurisdiction when applied to a well-pleaded complaint that relies on a state cause of action which incorporates federal law as one of the elements of recovery. The Court held that in such a case, the state claim does not involve a substantial federal question unless the federal law incorporated in the state cause of action provides a federal private right of action for its violation. *Id.* 106 S. Ct. at 3237; *see also Utley v. Varian Assoc., Inc.*, 811 F.2d 1279 (9th Cir.) (applying *Merrell Dow*), *cert. denied*, 484 U.S. 824, 108 S. Ct. 89, 98 L. Ed. 2d 50 (1987).

*Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1394 n.4 (9th Cir. 1988). The FDCPA provides a private right of action. *See* 15 U.S.C. § 1692k. If NRS section 649.370 contained additional substantive bases for liability apart from FDCPA, then such bases of liability could be invoked without creating federal-question jurisdiction. But section 649.370 refers exclusively and coextensively to FDCPA for its substance and provides no basis for liability apart from that provided for in FDCPA, under which a private, federal right of action lies. The Court therefore finds that even if a private cause of action lied under section 649.370 (none does), such a claim would support federal-question jurisdiction. *See Ethridge*, 861 F.2d at 1394 n.4.

The proposed new claims are futile, as well. Non-judicial foreclosure does not constitute "debt collection" under FDCPA. *Diessner v. MERS*, 618 F. Supp. 2d 1184, 1188–89 (D. Ariz.

2009) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); S. Rep. No. 95-382, 1977 U.S.C.C.A.N. 1695, 1698 (1977)).  And no violation of section 598.0923 is pled sufficiently, even if the three-year statute of limitations had not run.  Because amendment would not rescue any claims or add any plausible claims, the Court denies the motion to amend.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 5) is DENIED.

IT IS FURTHER ORDERED that the Motion to Amend (ECF No. 18) is DENIED.

IT IS FURTHER ORDERED that the Motions to Dismiss (ECF Nos. 2, 8) are GRANTED in part and DENIED in part.  All claims before the Court are dismissed except the claim for injunctive relief based on statutorily defective foreclosure.

IT IS FURTHER ORDERED that Defendants will submit a proposed order concerning mediation and interim payments with respect to the Property, in accordance with the Court's instructions at the hearing.

IT IS SO ORDERED.

Dated this 19th day of January, 2011.

_____
ROBERT C. JONES
United States District Judge